Slip Op 11-117

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| DIAMOND SAWBLADES MANUFACTURERS COALITION, | : : : |
| Plaintiff, | : : |
| v. | : Before: R. Kenton Musgrave, Senior Judge : Consol. Court No. 06-00248 |
| UNITED STATES, | : : |
| Defendant, | : : |
| and | : : |
| EHWA DIAMOND INDUSTRIAL CO., LTD., SH TRADING INC., and SHINHAN DIAMOND INDUSTRIAL CO. LTD., | : : : : |
| Defendant-Intervenors. | : : |

## OPINION AND ORDER

[Denying plaintiff's motion for preliminary injunction.]

Dated: September 22, 2011

*Wiley, Rein & Fielding LLP* (*Daniel B. Pickard* and *Maureen E. Thorson*), for the plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White*, *Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Delisa M. Sanchez*); and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (*Hardeep K. Josan*), of counsel, for the defendant.

*Akin Gump Strauss Hauer & Feld LLP* (*J. David Park* and *Jarrod M. Goldfeder*), for the defendant-intervenor Ehwa Diamond Industrial Co., Ltd.

Musgrave, Senior Judge:  Diamond Sawblades Manufacturers Coalition ("DSMC")

moves for a preliminary injunction.  It will not be granted at this time.

The underlying matter, filed in year 2006, is now a consolidation of separate challenges from DSMC and the above-named companies from the Republic of Korea to contest aspects of a final determination of sales at less than fair value ("LTFV") and the margins of dumping calculated therein. *See Notice of Final Determination of Sales at Less Than Fair Value and Final Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the Republic of Korea*, 71 Fed. Reg. 29310 (May 22, 2006) ("*LTFV Determination* "). The *LTFV Determination* eventually gave rise to the antidumping duty order on subject merchandise from Korea in *Diamond Sawblades and Parts Thereof From the People's Republic of China and the Republic of Korea: Antidumping Duty Orders*, 74 Fed. Reg. 57154 (Nov. 4, 2009) ("Order"), which issued with effect from January 23, 2009 as the culmination of lengthy prior unfair trade proceedings, familiarity with which is presumed, involving extensive United States bureaucracy and judiciary.

On November 24, 2009, shortly after the Order's publication, the Korean government requested "consultations" with the United States in the World Trade Organization ("WTO") as to zeroing methodology employed by the Department of Commerce, International Trade Administration ("Commerce") in three anti-dumping cases including the diamond sawblades investigation. *See United States – Use of Zeroing in Anti-Dumping Measures Involving Products from [the Republic of] Korea* ("*Korea WTO Con.*"), WT/DS402/1 (Nov. 26, 2011). The court presumes familiarity with the practice of zeroing in the interest of brevity.

The WTO Panel Report therefrom held the United States' use of zeroing in calculating the final margin for all three final determinations contrary to the Antidumping Agreement. *See Korea WTO Con.*, WT/DS402/R (Jan. 18, 2011). At the subsequent request of the

United States Trade Representative, Commerce initiated a proceeding pursuant to section 129 of the Uruguay Round Agreements Act ("URAA") to "implement" the adverse report.  *See*  19 U.S.C. § 3538(b).  On July 26, 2011, Commerce issued preliminary results, preparatory to section 129 implementation.  *See Preliminary Results Under Section 129 of the Uruguay Round Agreements Act: Antidumping Measures on Diamond Sawblades and Parts Thereof from the Republic of Korea* (July 26, 2011) (copy attached to Pl.'s Mot. for TRO and for Prelim. Injunction ("Pl.'s Br.) as Ex. 1).

In those preliminary results, Commerce recalculated the dumping margins without using zeroing methodology and determined that in the absence of zeroing no dumping margins would exist for any of the Korean respondent companies. Commerce also stated that "if the mandatory respondents' margins remain at zero or are *de minimis* for the final recalculation, this order would be revoked upon implementation."  Interested parties, including DSMC, submitted comments to Commerce upon those results in August 2011.

Insofar as the court is presently aware, Commerce has yet to reach final results for the section 129 determination.  At that point, Commerce must then await direction from the United States Trade Representative, which "*may . . . direct*" Commerce to implement the new margin results, and the effect of such a section 129 determination would be applied prospectively to all subject merchandise entered or withdrawn from warehouse for consumption on or after the date on which the USTR "directs" Commerce to so instruct.  *See* 19 U.S.C. § 3538(c)(1)(B) (italics added).

Nonetheless, as a consequence of the preliminary 129 determination, on August 24, 2011 (and as supplemented with a second proposed order the next day), DSMC moved the Court for a temporary restraining order (TRO) and a preliminary injunction against revocation of Order that

would enjoin ordering liquidation by U.S. Customs and Border Protection without antidumping duties or lifting the suspension of liquidation on incoming merchandise subject to the Order during the pendency of the underlying litigation.  The court's initial reaction was that the TRO motion was not ripe, as Commerce had yet to issue a final section 129 determination, and the TRO motion was therefore denied.  *See* Order of Aug. 26, 2011, ECF No. 47.

A preliminary injunction at this stage requires further consideration of (1) the movant's likely success on the merits; (2) irreparable harm if preliminary relief is not granted; (3) the balance of the hardships; and (4) the public interest.  *See, e.g.*, *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).  The absence of any one factor precludes issuance of such a writ.

DSMC argues that if the Order is revoked, it will effectively moot DSMC's challenges to those aspects of the *LTFV Determination* that would impact the cash deposit rates for imports from Korea, whereas, DSMC continues, success on its challenges underlying this litigation would still result in a non-*de-minimus* margin of dumping (and proper retention of the Order) even if the margin calculation did not employ zeroing methodology.  DSMC clarifies that it does not seek to enjoin Commerce from revising the cash deposit rates to zero, so long as the antidumping order and suspension of liquidation are retained, but it believes the agency lacks the authority to do so in the absence of permission from the Court.  Pl.'s Br. at 10 n.7 (referencing *Hyosung D&P Co. v. United States*, Slip Op. 10-26 at 6 (Mar. 11, 2010) (Commerce is no longer authorized to amend its determination once it is challenged in this Court).

A court has a duty to prevent impairment of the effective exercise of jurisdiction during an action's pendency.  *See, e.g.*, *FTC v. Dean Foods Co.*, 384 U.S. 597 (1966).  The All Writs

Act thus empowers courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law[,]" 28 U.S.C. § 1651, and a section 129 determination that results in revocation of the Order would directly impact jurisdiction over the *res* of DSMC's action.   However, "the ordinary consequences of antidumping duty procedures do not constitute irreparable harm[,]"[1] *Matsushita Elec. Indus. Co. v. United States*, 823 F.2d 505, 509 (Fed. Cir.  1987) (quoting *Toshiba Corp. v. United States*, 11 CIT 141, 143, 657 F. Supp. 534, 535 (1987)), and a section 129 determination is distinct from the LTFV determination.   *See*, *e.g.*, *Uruguay Round Agreements Act, Statement of Administrative Action*, H.R.Rep. No. 103-316, at 303 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4313 (section 129 "determinations have prospective effect only" and "if implementation of a WTO report should result in the revocation of an antidumping or countervailing duty order, entries made prior to the date of Trade Representative's direction would remain subject to potential duty liability").   In other words, a final section 129 determination in this instance would not change or alter any of the legal conclusions upon which the *LTFV Determination* is predicated.   The jurisdictional concern expressed in *Hyosung* is therefore inapplicable.

More to the point, however, Commerce has not issued an applicable final section 129 determination, the USTR has not directed Commerce to "implement" that determination, and

---

[1]  A final administrative or changed circumstances review determination, for example, would also moot a challenge to the cash deposit rate established at an LTFV determination.   Their orderly process is not stayed during the pendency of a challenge to the LTFV determination, and Commerce is presently due to complete the preliminary results of the first administrative review by November 30, 2011.   *See Diamond Sawblades and Parts Thereof From the Republic of Korea: Extension of Time Limit for the Preliminary Results of the Antidumping Duty Administrative Review*, 76 Fed. Reg. 40324 (July 8, 2011).   Final results would be due 120 thereafter.   *See* 19 U.S.C. 1675(a)(3)(A).

Commerce has not attempted to revoke the Order.  Congress has, however, established an orderly process for challenging administrative action.  To preclude Commerce from attempting to interpret, or implement, or act with regard to whatever consequences follow from, any final section 129 determination (which may or may not materialize during the pendency of the instant action) at this point would interfere with that process.  *See*, *e.g. Fundicao Tupy S.A. v. United States,* 11 CIT 561, 669 F. Supp. 437 (1987).  There may come a time when doing so would be appropriate to preserving the *status quo* of a particular case, *cf.* 28 U.S.C.§ 1367 (supplemental jurisdiction), § 1585 (powers of CIT) (*cf. also Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 34 CIT ___, 700 F. Supp. 2d 1330 (2010), *appeal docketed*, CAFC No. 2011-1040), but in this matter, at this point in time, and in the event attempted revocation of the Order does materialize, DSMC is not without further and expeditious recourse, including renewal of this motion here and/or filing a new legal action to contest the administrative determination, seeking enjoinder of liquidation, and immediately moving for consolidation herewith, thereby properly preserving both actions.

In view of the foregoing, the parties' presentations obviate the need for a hearing, and DSMC's motion for preliminary injunction must be, and it hereby is, denied, without prejudice.

**So ordered**.

/s/  R. Kenton Musgrave
R.  Kenton Musgrave, Senior Judge

Dated: September 22, 2011
         New York, New York