Slip Op 11- 137

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DIAMOND SAWBLADES MANUFACTURERS COALITION, | : |
| Plaintiff, | : |
| v. | : Before: R. Kenton Musgrave, Senior Judge |
| | : Consol. Court No. 06-00248 |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| EHWA DIAMOND INDUSTRIAL CO., LTD., SH TRADING INC., and SHINHAN DIAMOND INDUSTRIAL CO. LTD., | : |
| Defendant-Intervenors. | : |

## OPINION

[Addressing grant of plaintiff's motion for injunction]

Dated:  November 3, 2011

*Wiley, Rein & Fielding LLP* (*Daniel B. Pickard* and *Maureen E. Thorson*), for the plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Stephen C. Tosini* and *Delisa M. Sanchez*), and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (*Hardeep K. Josan*), of counsel, for the defendant.

*Akin Gump Strauss Hauer & Feld LLP* (*J. David Park* and *Jarrod M. Goldfeder*), for the defendant-intervenor Ehwa Diamond Industrial Co., Ltd.

*Perkins Coie LLP* (*Michael P. House* and *Sabaha Chaudhary*), for the defendant-intervenors SH Trading Inc. and Shinhan Diamond Industrial Co. Ltd.

Musgrave, Senior Judge:  Slip opinion 11-117 previously denied as unripe the motion of the plaintiff Diamond Sawblades Manufacturers Coalition ("DSMC") to enjoin  the International Trade Administration of the Department of Commerce ("Commerce") from revoking and/or causing liquidation of entries currently suspended administratively pursuant to the antidumping duty order on diamond sawblades and parts thereof from the Republic of Korea, 74 Fed. Reg. 57154 (Nov. 4, 2009) ("Order").  For the following reasons, the court has granted DSMC's renewed motion for injunction.

## I.  *Background*

DSMC filed the underlying judicial action in 2006 to challenge certain scope and dumping margin aspects of *Notice of Final Determination of Sales at Less Than Fair Value and Final Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the Republic of Korea*, 71 Fed. Reg. 29310 (May 22, 2006) ("*LTFV*"), as compiled by Commerce.  In January 2011, at the request of the government of the Republic of Korea, the World Trade Organization issued an adverse panel report concluding that the United States had "acted inconsistently with the first sentence of Article 2.4.2 of the Anti-Dumping Agreement by using the zero methodology," *inter alia*, in determining the margins for the *LTFV* determination.  *See* Panel Report, *United States – Use of Zeroing in Anti-dumping Measures Involving Products from Korea*, WT/DS402/R ¶ 8.1 (Jan. 18, 2011).  On October 4, 2011, pursuant to section 129 of the Uruguay Round Agreements Act ("URAA"), 19 U.S.C. § 3538(b)(2), Commerce issued its final results on implementation of the adverse panel report, wherein it announced issuance of its "determination in

connection with the particular proceeding that would render the administering authority's action . . .

not inconsistent with the findings of the panel or the Appellate Body."

Implementation of Commerce's section 129 determination from that point only

requires instruction from the Office of the United States Trade Representative, *see* 19 U.S.C. §

3538(b)(4), and on the date of such instruction, the Order will be revoked, and further instruction

issued by Commerce to U.S. Customs and Border Protection ("Customs") to lift the administrative

suspension of liquidation of subject merchandise entered after such date, for which liquidation has

been suspended since January 23, 2009, the date following Commerce's receipt of the "Timken"

notice on this matter. *See id.* at § 3538(c); *Diamond Sawblades and Parts Thereof from the People's*

*Republic of China and the Republic of Korea: Notice of Court Decision Not In Harmony With Final*

*Determination of the Antidumping Duty Investigations*, 74 Fed. Reg. 6570, 6570-71 (Feb. 10, 2009).

Averring that it would receive no further notice prior thereto, DSMC renewed its

petition to enjoin Commerce from revoking the Order and/or issuing instructions to Customs to

liquidate entries of subject merchandise for which liquidation has been administratively suspended

in accordance with the affirmative *LTFV* determination underlying this action.

A

In determining whether an administrative determination is final, a court looks to (1)

"the fitness of the issue for judicial decision" and (2) "the hardship to the parties of withholding

court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967).

As a general matter, two conditions must be satisfied for agency action to be "final":
First, the action must mark the "consummation" of the agency's decision[ ]making
process – it must not be of a merely tentative or interlocutory nature. And second,

> the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). *See Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1362 (Fed. Cir. 2008) (quoting *Bennett*). On October 13, 2011, the court concluded Commerce's final section 129 determination satisfied both standards: it is clearly "final," leaving no "room for Commerce to change course" if USTR instructs it to implement its determination (*see* 529 F.3d at 1363), and is one from which legal consequences will flow upon implementation. After considering DSMC's petition and the government's response of October 12, 2011, the court issued a temporary restraining order to preserve the *status quo*, via continuance of the suspension of liquidation, and called a hearing for October 24, 2011.

B

The purpose of an injunction is to continue to preserve the relative positions of the parties pending adjudication. *See, e.g., Fundicao Tupy S.A. v. United States*, 841 F.2d 1101, 1103 (Fed. Cir. 1988). Injunction requires consideration of the familiar four factors of (1) the threat of immediate and irreparable harm if preliminary relief is not granted, (2) the movant's likelihood of success on the merits, (3) the balance of the hardships, and (4) the public interest. *See, e.g., FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *PPG Industries, Inc. v. United States*, 14 CIT 18, 729 F. Supp. 859 (1990). The absence of any one factor precludes issuance of the writ.

At the hearing, and in its petition, with regard to the first prong of the test, DSMC emphasizes that without an injunction against the discontinuance of the suspension of liquidation, all incoming entries of diamond sawblades and parts thereof from Korea subject to the Order will be liquidated, no dumping duties will be assessed regardless of the court's final judgment in this

underlying challenge to the LTFV margin, and liquidation will moot DSMC's arguments as to

incoming entries and thereby deny DSMC a substantial portion of the relief if seeks, thus causing

DSMC irreparable injury.  *See* Pl's (Second) Mot. for . . . Injunction ("Pl's Mot."), Ex. 2 (affidavit

of domestic industry manufacturer).  Moreover, DSMC avers, apart from liquidation, the mere entry

of Korean imports without the proper imposition of antidumping duties denies DSMC the relief

owed to it under the trade remedy laws, and in the absence of an injunction against liquidation

meaningful relief will be foregone.  Regarding the likelihood of success on the merits, DSMC points

to the thirteen counts of its complaint, among which are allegations of *LTFV* error in decisions, *e.g.,*

not to collapse two affiliated producers, in calculations of constructed export price profit and net

U.S. price, and in the proper treatment of non-market economy (NME) inputs in a market economy

case.  On the third factor for injunction, DSMC argues that the other parties would at most be

inconvenienced by delayed liquidation, and that any "hardship" to them is far outweighed by the

irreparable harm to it; that is, the potential entry of imports that are never subject to antidumping

duties amounts to negation of a statutory right of judicial review, whereas for the government to

continue to suspend liquidation merely amounts to an inconvenience.  Pl's Mot. at 12.  *See Timken*

*Co v. United States*, 6 CIT 76, 81, 569 F. Supp. 65, 71 (1983); *Target Corp. v. United States*, Slip

Op. 10-141 at 6 (Dec. 23, 2010).  On the fourth factor, DSMC argues granting the injunction would

serve the public interest because it is settled that "it is best served by ensuring that [Commerce]

complies with the law, and interprets and applies [U.S.] international trade statutes uniformly and

fairly[,]" *Ceramica Regiomontana, S.A. v. United States*, 7 CIT 390, 397, 590 F. Supp. 1260, 1265

(1984), and "it is always in the public interest to allow the courts to conduct a full examination of

the facts and the law in any given case, to ensure that justice will prevail."  Pl.'s Mot. at 14,

referencing *id*. and *Target*, *supra*.

DSMC clarifies that a direct challenge to the 129 determination is neither necessary

nor appropriate for preserving its challenge to the *LTFV* determination because what is at stake is

the appropriate calculation of the margin.  In other words, DSMC states, it does not have any issue

with the section 129 determination *per se*, but it objects that the 129 determination "does 'change

or alter' the effects of the [*LTFV*] results . . . by making the original determination completely

ineffective as to incoming entries," and that an injunction is necessary to prevent any Korean imports

later determined through the process of judicial review of the *LTFV* determination to be sold at

unfair prices – even in the absence of zeroing methodology – from "escaping antidumping duty

liability[.]"  Pl.'s Mot. at 8-9, referencing *Hosiden Corp. v. United States*, 85 F.3d 589 (Fed. Cir.

1996) (vacating CIT order to Commerce to revoke antidumping duty order, as revocation would have

permitted entries to liquidate duty-free despite ongoing litigation over entries otherwise subject to

antidumping duty order).  DSMC avers that its client would be disadvantaged by having to file

additional expenditure to challenge a decision (the section 129 determination) that they may not have

a good faith basis for challenging, other than, or simply in order, to preserve its challenge to the

*LTFV* margin.  Additionally, DSMC points out there is "a more nuanced" risk that if a challenge to

the 129 determination proceeded first and was upheld before a judicial decision on its *LTFV*

challenge, then that circumstance would still moot any challenge to the *LTFV* margin.

The government argues the court lacks jurisdiction to grant the relief DSMC requests

because the section 129 determination, if implemented, would in no way impact the court's

jurisdiction over the *LTFV* challenge as its effect is prospective only.  The government avers that after notice from the USTR to Commerce, Commerce would implement the section 129 determination by publishing a notice of revocation in the Federal Register, and only thereafter would Commerce instruct Customs to lift the suspension of liquidation.  Since the statute provides 30 days for judicially challenging a section 129 determination, 19 U.S.C. § 1516a(a)(2)(A)(i)(III), the government argues DSMC will have an opportunity to challenge the 129 determination once it is complete, and if implemented in a manner that results in revocation.  Def's Resp. at 8.

DSMC responds that the fact that there is a 30 day statutory period within which DSMC could file an appeal to challenge the revocation and seek suspension of liquidation is not the same thing as saying that DSMC is protected within such 30 day period.

Defendant-intervenors SH Trading Inc. and Shinhan Diamond Industrial Co. Ltd. ("SH and Shinhan") argue a number of points: (1) respondents would suffer irreparable harm by the uncertainty created by any continuance of the Order at this point and the continuing threat of potential liability going forward, (2) the specific deadline of November 1, 2011 was negotiated between the government of Korea and USTR for implementation because that date that would trigger the third administrative review, (3) the burden of having to submit to another review constitutes irreparable harm (4) there are clear statutory provisions providing for a separate judicial option to challenge whatever the USTR or Commerce mean when they decide to "implement" an adverse WTO panel report, (5) the relief DSMC seeks in reality is to "reach forward" to a separate proceeding over which the court has no jurisdiction (as of yet), and (6) the section 129 determination is equivalent to a negative finding of less than fair value further from which the mere liquidation of

entries does not constitute irreparable harm.  *See generally* Def.-Int. Shinhan's Opp. to . . . Injunction.  Queried how they are harmed by continued suspension of liquidation, SH and Shinhan averred that harm is "quite substantial" in the form of uncertainty in circumstances where Commerce has determined that no dumping has occurred, and that, as in *FMC Corp. v. United States*, 16 CIT 378, 792 F. Supp. 1285 (1992), *aff'd*, *supra*, 3 F.3d 424, liquidation of future entries cannot constitute immediate and irreparable harm to a domestic industry because any future harm can be addressed by future judicial relief.  *See* Def.-Int. Shinhan's Opp. to . . . Injunction at 9.

Defendant-intervenor Ehwa Diamond Industrial Co., Ltd. also notes DSMC's representation that it will not challenge the section 129 determination is an "important acknowledgment" in regard to whether the 129 should apply to revocation, and it argues any injunction should not cover revocation.  Further echoing the government, Ehwa also emphasized that once revocation occurs and is not challenged, then entries from that point forward are statutorily precluded from the imposition of antidumping duties.  Ehwa also argues DSMC has not met the standards for issuance of an injunction, especially with respect to likelihood of success, because Ehwa's margin calculation went from 8.8 percent to minus 12 percent as a result of the section 129 determination.  Ehwa therefore believes DSMC's action cannot justify continuance of the Order even if it prevails on its merits.

## II.  *Discussion*

Regarding the government's argument that the court lacks jurisdiction over entries that would be covered by the section 129 determination, there is no jurisdiction to "lack" over a revocation decision that has not been implemented.  The issue at this juncture (at the time of the

hearing)[1] is not about jurisdiction over any impending implementation of Commerce's final section 129 determination, it is about the court's existing jurisdiction over DSMC's challenge to the *LTFV* determination and the entries subject to it (which have been ongoing since January 22, 2009) – and over which Commerce is not currently possessed of jurisdiction.  The Statement of Administrative Action in the URAA approved by Congress indicates that "[i]n some cases, implementation of section 129 determinations may render moot all or some issues in pending litigation in connection with the agency's initial determination[,]"[2] and that may be true upon such implementation, but, as DSMC correctly notes, nothing in the URAA prohibits a court from keeping an issue alive or taking action to prevent interference with its jurisdiction, and it is undisputed that jurisdiction over the *LTFV* result, and the entries subject to it, is presently and properly vested here.

      19 U.S.C. § 3538(c)(1) provides that subject merchandise entered "on or after" the date the Office of the United States Trade Representative instructs Commerce to implement its section 129 determination is afforded the consequences of that determination.  Thus, unless a plaintiff challenging a section 129 determination (including the consequences therefrom) can file its action, obtain an injunction on liquidation, and serve papers on Commerce and Customs – all on the date of publication of notice of revocation – liquidation can occur to thwart the plaintiff's claims. The government contends that is highly unlikely, but in this court's experience the prospect is not

---

[1]  Subsequent to the Court's October 24, 2011 hearing, on October 28, 2011 Commerce published *Notice of Implementation of Determination Under Section 129 of the Uruguay Round Agreements Act and Revocation of the Antidumping Duty Order on Diamond Sawblades and Parts Thereof From the Republic of Korea*, 76 Fed. Reg. 66892 (Oct. 28, 2011), with effect from October 24, 2011, the date USTR instructed Commerce to implement its section 129 determination.

[2]  Statement of Administrative Action,  H.R. Rep. 103-316 at 303 (Dec. 8, 1994), reprinted at 1994 U.S.C.C.A.N. 4040, 4314.

out of the realm of possibility.  Although it would appear improper for Commerce to implement a

decision that has the effect of altering the *status quo* of the *LTFV* determination before the Court,[3]

the presumption of administrative regularity does not operate "preclusively," and "good intentions"

are sometimes best regarded as mere "road pavement."  *See*, *e.g.*, *Royal Business Machines, Inc. v.

United States*, 1 CIT 24, 26 (1980) (Commerce's representation that it would voluntarily refrain from

action until plaintiff is afforded opportunity to be heard in court affords insufficient protection).  *Cf.*

*Agro Dutch Industries, Ltd.*, 589 F.3d 1187 (Fed. Cir. 2009); *AK Steel Corp. v. United States*, 27 CIT

1382, 281 F. Supp.2d 1318 (2003).

> While the court may not issue an injunction contrary to law, it need not forego
> granting injunctive relief because the agency has also administratively suspended
> liquidation. The power of this court sitting in equity complements Commerce's
> administrative suspension. The actions taken by an agency to enforce the court's
> judgment or orders, such as continued administrative suspension of liquidation
> throughout the court's review of the agency's determination, is separate and distinct
> from the court's grant or denial of a preliminary injunction.

*SKF USA Inc. v. United States*, 28 CIT 170, 181, 316 F. Supp. 2d 1322, 1333 (2004) (footnote

omitted), *vacated as moot*, 512 F.3d 1326 (Fed. Cir. 2008).

        Considering the point that liquidation of future entries cannot constitute immediate

and irreparable harm to a domestic industry, the Court of Appeals for the Federal Circuit has

observed that "although there may be prospective relief available as to future entries, there is no

prospective relief – or, otherwise stated, meaningful relief that can be applied retroactively

subsequent to an appeal – to correct an improper liquidation[.]"  *FMC Corp.*, 3 F.3d at 431.  And

---

[3] *But see* Issues and Decision Memorandum for the Final Results of the Proceeding Under
Section 129 of the URAA at 5 (Commerce "has the authority to . . . revoke the antidumping duty
order *irrespective* of the pending litigation over the LTFV final determination") (italics added); *see
also* note 1, *supra*.

it is settled that "the inability of reviewing courts to meaningfully correct the review determination is irreparable injury that must be considered by the trial court" on a petition for an injunction. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 811 (Fed. Cir. 1983). *See, e.g.*, *Qingdao Taifa Group Co. v. United States*, 32 CIT ___, Slip Op. 08-118 (Nov. 4, 2008); *PPG Industtries*, *supra*, 14 CIT at 21, 729 F. Supp. at 861.

The court also considers that if it is inappropriate for a court to interfere with an agency's lawful conduct of its statutory administrative duties, the reverse is true as well.  The court is possessed of the authority to prevent the impairment of jurisdiction as a consequence of agency action, *see* 28 U.S.C. § 1651, and, as previously observed, the court has the duty to preserve jurisdiction over matters pending or perceived.  *Cf. FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (the All Writs Act, 28 U.S.C. § 1651, even extends to "potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected").[4]

Commerce has determined that revocation of the Order will be necessary upon implementation of its section 129 determination.  Revocation of the Order, if left unchallenged, would effectively moot the *LTFV* determination.  It is, thus, apparent that Commerce's determination amounts to a threat of irreparable harm to the relief that may be afforded in DSMC's challenge to the *LTFV* determination, as jurisdiction would be effectively divested over the instant action, were liquidation undertaken and not enjoined.  And it is undisputed that the court maintains jurisdiction

---

[4]  The *Dean Foods* analysis was "heightened" by *Sampson v. Murray*, 415 U.S. 61 (1974), *see VNA of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020 (11th Cir. 1983).  The distinction imposed by *Sampson* is "whether the reviewing court's eventual jurisdiction will be defeated, and whether a *status quo* injunction would be contrary to the statutory scheme."  711 F.2d at 1030. Eventual jurisdiction is not the issue here, *see infra*, and the answer to the latter is no.

over the *LTFV* determination.  DSMC's presentation thus satisfies the threat of irreparable injury prong for issuance (or rather continuance) of injunction.

The likelihood of success criterion is not one of mathematical probability.  It is best considered in inverse proportion to irreparable harm.  *See, e.g.*, *Fundicao Tupy S.A. v. United States*, 11 CIT 635, 638, 671 F. Supp. 27, 30 (1987); *American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 300, 515 F. Supp. 47, 53 (1981).  If the movant demonstrates the potential for irreparable harm in the absence of an injunction, then it is ordinarily sufficient that the movant raise questions that are "serious, substantial, difficult, and doubtful" in order to satisfy the likelihood of success criterion.  *Timken*, *supra* 6 CIT at 80, 569 F. Supp. at 70.  *See, e.g.*, *Target*, *supra*; *Mittal Canada Inc. v. United States*, 30 CIT 154, 161, 414 F. Supp. 2d 1347, 1354 (2006).  These DSMC has alleged in its complaint.

Considering the balance of hardships, the court concludes that the defendant and defendant-intervenors will at most be inconvenienced but not otherwise suffer substantial hardship by issuance of an injunction .  *See, e.g.*, *Tianjin Magnesium Intern. Co., Ltd. v. United States*, 32 CIT ___, 533 F. Supp. 2d 1327 (2008); *Corus Staal BV v. United States*, 31 CIT 826, 493 F. Supp. 2d 1276 (2007).  Participation in administrative review does not outweigh the potential irreparable harm to the domestic industry should an injunction not issue.

Last, of course, is consideration of the public interest, which the court considers as aforesaid.

### III.  *Conclusion*

In accordance with the foregoing, the court concluded DSMC had satisfied the standards for (continued) injunction and issued an order to that effect after the hearing.  To be clear, Commerce is not enjoined from reducing the cash deposit rate to zero percent during the pendency of this *LTFV* challenge.  As before, despite arguing that it would result in a "cleaner" process (administratively and judicially) were revocation enjoined as well, DSMC did not persuade this court that direct enjoinder of revocation was necessary or appropriate.

In passing, the court notes that the relief DSMC seeks with respect to the *LTFV* determination has only prospective effect on the cash deposit rate; however, relief may also have retrospective effect to the extent it impacts the viability of the antidumping duty order itself.  If DSMC is correct that it would be improper to preserve its challenge to the *LTFV* determination by "challenging" the section 129 determination (with which it avers it has no substantive contention), simply in order to bring the revocation under the ambit of its challenge to the *LTFV* determination, DSMC must still challenge revocation in some fashion nonetheless in order to preserve its *LTFV* action.  DSMC questioned how it could properly challenge that revocation except via "extension" or "inclusion" of jurisdiction of the *LTFV* action over revocation, but that issue was not properly before the court at the time of the hearing.

As ordered.

/s/  R. Kenton Musgrave
R.  Kenton Musgrave, Senior Judge

Dated: November 3, 2011
       New York, New York