Slip Op. 14 - 105

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| DIAMOND SAWBLADES MANUFACTURERS COALITION, | : : : |
| Plaintiff, | : : |
| v. | : Before: R. Kenton Musgrave, Senior Judge : |
| UNITED STATES, | : Consol. Court No. 06-00248 : |
| Defendant, | : : |
| and | : : |
| EHWA DIAMOND INDUSTRIAL CO., LTD., SH TRADING, INC., and SHINHAN DIAMOND INDUSTRIAL CO. LTD., | : : : : |
| Defendant-Intervenors. | : : |

**MEMORANDUM & ORDER**

[On grant of consolidated-plaintiff's motion for injunction.]

Dated:  September 10, 2014

*Daniel B. Pickard* and *Maureen E. Thorson*, Wiley, Rein & Fielding, LLP, of Washington, D.C., for the plaintiff Diamond Sawblades Manufacturers Coalition.

*Jeffrey S. Grimson*, *Kristin H. Mowry*, *Jill A. Cramer*, *Sarah M. Wyss*, and *Daniel R. Wilson*, Mowry & Grimson, PLLC, of Washington, D.C., for the consolidated-plaintiff Hyosung D&P Co., Ltd.

*Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director.  Of Counsel on the brief was *Aman Kahar*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

  *Bruce M. Mitchell*, *Max F. Shutzman*, and *Ned H. Marshak*, Grunfeld, Desiderio, Lebowitz, Silverman & Kledstadt, LLP, of Washington, D.C., for defendant-intervenor Ehwa Diamond Industrial Co., Ltd.

  *Michael P. House* and *Sabahat Chaudhary,* Perkins Coie, LLP, of Washington, D.C., for defendant-intervenors SH Trading Inc. and Shinhan Diamond Industrial Co. Ltd.

  Musgrave, Senior Judge: This memorandum explains the court's grant on September 9, 2014 of the motion of the consolidated-plaintiff Hyosung D&P Co., Ltd. ("Hyosung") to enjoin U.S. Customs and Border Protection ("Customs") from liquidating entries of diamond sawblades from the Republic of Korea exported by Hyosung that are subject to the antidumping proceeding challenged by this action, *Diamond Sawblades and Parts Thereof from the Republic of Korea*, 71 Fed. Reg. 29310 (May 22, 2006) (final less-than-fair-value and critical circumstances determination) ("*Investigation*"), *amended* 75 Fed. Reg. 14126 (Mar. 24, 2010).

I

  Conducted by the defendant International Trade Administration, U.S. Department of Commerce ("Commerce"), the *Investigation* was completed May 22, 2006 and timely challenged by domestic industry petitioners, Diamond Sawblades Manufacturers Coalition, on July 24, 2006. After certain other litigation, the antidumping duty order emanating from it was finally published November 4, 2009 and timely challenged by respondents, including Hyosung, in three separate actions, all filed December 4, 2009, that were subsequently consolidated into this action in July 2011.

  Beginning in August 2011, and prevailing on October 24, 2011, the domestic industry sought and obtained, *inter alia*, continued suspension of liquidation in the form of a preliminary

injunction ("PI") enjoining liquidation of entries of merchandise subject to the *Investigation* "pending a final and conclusive court decision in this litigation, and any appeals therefrom". ECF Doc. 58 (Oct. 24, 2011). For its part, Hysosung's substantive argument concerning the use of "zeroing" during the *Investigation* was later denied on the merits, *per Diamond Sawblades Manufacturers Coalition v. United States*, 37 CIT ___, Slip Op. 13-130 (Oct. 11, 2013), at the conclusion of USCIT Rule 56.2 motions and briefing.

Shortly before issuance of that decision, the defendant-intervenor Shinhan Diamond Industrial Co., Ltd. and SH Trading Inc. (collectively, "Shinhan") moved to modify the PI. ECF Doc. 138 (Sep. 27, 2013). Shinhan's motion was predicated on the fact that subsequent to issuance of the PI, Commerce published the final results of its first and second annual administrative reviews of the antidumping duty order on diamond sawblades from the Republic of Korea ("Korea") and that no party had sued to challenge those final results. *Id*. at 2. Because no case or controversy existed with regard to the final assessment of those duties on entries during the reviews, Shinhan argued that the antidumping duties assessed on relevant entries pursuant to those reviews are final and the entries should be liquidated. *Id*. at 6-8. Shinhan therefore requested modification of the PI to exclude entries of diamond sawblades from Korea subject to those administrative reviews. *Id*. at 12.

In responding to Shinhan's motion, Ehwa objected to amending the PI in the way Shinhan proposed, on the ground that doing so lifted the suspension of liquidation of Ehwa's entries for the first administrative review period where Ehwa had an assessed margin. ECF Doc. 139 at 4 (Oct. 8, 2013). However, because Ehwa did not have antidumping duty liability for the second administrative review period, it did not oppose the liquidation of those entries. *Id*. Therefore, Ehwa

pleaded for modifying Shinhan's proposed amendment to preserve suspension of liquidation over its entries during the first administrative review. *Id*. No other response being apparent and the parties otherwise appearing in agreement, the court granted Shinhan's motion to alter the terms of the PI but as modified by Ehwa's proposal. ECF Doc. 147 (Oct. 18, 2013).

Hyosung did not file a response to Shinhan's motion, although it received notice of those proceedings, via its counsel at the time. Several months after the injunction was modified, counsel for Hyosung filed a motion to withdraw from this case, citing a "long-standing and unresolved commercial dispute with Hyosung." ECF Doc. 155 (Feb. 11, 2014). On March 3, 2014, the court granted that motion to withdraw. *See* ECF Doc. 158 (Mar. 3, 2014). The Hyosung corporation was therefore without representation in this judicial action for five and a half months until August 27, 2014.

Approximately two months after the withdrawal of Hyosung's counsel, on April 29, 2014, the defendant filed another motion to amend the October 18, 2013 preliminary injunction. The defendant's request was for the purpose of clarifying what it perceived as ambiguous language in the PI that did not, as amended in accordance with Shinhan's motion, permit issuance of liquidation instructions. *See* ECF Doc. 162 at 3 (Apr. 29, 2014). Proposing alternative language for enjoinder, the defendant's motion represented that "[a]ll parties to this action have reviewed the clarified language we are proposing and have indicated that they consent to this modification." *Id*. at 1. On April 30, 2014, the court amended the PI as requested by the defendant. ECF Doc. 164 (entered Apr. 30, 2014).

On August 27, 2014, Hyosung obtained from the court, *ex parte*, a temporary restraining order ("TRO"), effective until September 10, 2014, to restrain liquidation of all unliquidated entries of its diamond sawblades. Hyosung represented that as a result of the completed first and second annual administrative reviews[1] that were undertaken pursuant to the antidumping duty order, it would suffer irreparable harm if its entries were liquidated prior to a final decision in this matter, including all appeals. Hyosung averred it was not consulted as to the modification of the PI in contravention of USCIT Rule 7(f), and that its importers have been receiving bills from Customs including antidumping duty assessments. The court issued a TRO the same day to preserve the *status quo*. ECF Doc. 182 (Aug. 27, 2014). Hyosung Br. at 6.

Yesterday, September 9, 2014, the court heard from interested parties on the remainder of Hyosung's motion (styled as "Motion for Temporary Restraining Order and Preliminary Injunction") concerning whether to continue enjoinder. In advance, the defendant filed opposition to that continuance, in which it agreed as to the basic background of the proceedings to this point (above detailed) but argued (1) diligence was lacking on Hyosung's part as a precondition to obtaining equity (2) the injunction Hyosung seeks is not a preliminary one but "permanent" one, albeit of limited duration, and (3) given the prior decision on Hyosung's claim in slip opinion 13-130, Hyosung cannot establish a likelihood of success on the merits, which is one of the four necessary prongs considered for injunctive relief.

---

[1] *Diamond Sawblades and Parts Thereof from the Republic of Korea*, 78 Fed. Reg. 11818 (Feb. 20, 2013) (first admin. review final results), and *Diamond Sawblades and Parts Thereof from the Republic of Korea*, 78 Fed. Reg. 36524 (Jun. 18, 2013) (second admin. review final results), *amended* 78 Fed. Reg. 46569 (Aug. 1, 2013). The first administrative review covers entries from January 23, 2009 through October 31, 2010, while the second covers entries from November 1, 2010 through October 23, 2011.

Consol. Court No. 06-00248　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

## II

The court found the defendant's arguments unpersuasive as to why suspension of liquidation should not be revived or continued. The reasons therefor are as follows. First and foremost, the defendant's arguments, while carrying a certain appeal, overlook the primary purpose of injunction in these types actions, which is to continue to suspend liquidation pending a final decision on the merits, including all appeals thereof, not only to preserve the *status quo* pending the outcome of the litigation, but also to preserve the court's jurisdiction. *Cf.* 19 U.S.C. §1516a(c)(2) (trade-remedy injunctive relief) *with* 28 U.S.C. § 1651 (All Writs Act).

It is true that preliminary injunction is a form of extraordinary relief, but injunction in these type of matters is statutory. As such, trade-remedy injunction is not "traditional," *i.e.*, of the type "predicated upon a cause of action, such as nuisance, trespass, the First Amendment, *etc.*, regarding which a plaintiff must show a likelihood or actuality of success on the merits." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). This is so, regardless of fact that in the absence of statutorily-specified standards for their issuance, this court's practice, from the start, has involved looking to the four prongs of the "traditional" test for injunction. *See Zenith Radio Corp. v. United States*, 1 CIT 53, 505 F. Supp. 216 (1980).

The defendant characterizes what Hyosung seeks as "a permanent injunction, albeit of limited duration", Def's Resp. at 5 (italics omitted), but the absence of a "traditional" equitable cause of action obviates any need to consider conversion of a preliminary injunction into a "permanent" form of final post-judgment relief. And "[t]here is no such thing as a suit for a traditional injunction in the abstract." *Klay*, 376 F.3d at 1097. Moreover, the "traditional" standards

for obtaining a *preliminary* injunction, as a form of extraordinary relief, are actually *higher* than the standard for converting to (or commencing) *permanent* injunction after a final decision on the merits: proof of "actual success" is straightforward as compared to proof of "likelihood." *See Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). And the fact that "likelihood" drops out of the equation does not bolster the defendant's argument, regardless of the present disposition of the consolidated-plaintiff. In any event, having acknowledged the limited temporal nature of the relief Hyosung seeks, Def's Resp. at 5, the defendant also acknowledges that a final decision on this action has not yet issued, from which appeal could lie, so the feasibility of a "permanent" injunction at this point is simply moot.

The defendant also argues *Wind Tower Trade Coalition v. United States*, 741 F.3d 89 (Fed. Cir. 2014) is on point. In that case, upon issuance of antidumping and counterveiling duty orders resulting from final affirmative determinations, Commerce applied the so-called "special rule" of 19 U.S.C. §§ 1671e(b)(2) and 1673e(b)(2) to make the orders prospectively effective from the date of the affirmative determination by the U.S. International Trade Commission, and Commerce also announced it was terminating the suspension of liquidation and refunding cash deposits on imports of subject merchandise that had occurred prior to the Commission's determination. Representatives of the domestic industry brought suit to challenge that disposition and obtained TROs, but its motions for PIs were not found to have provided an adequate showing of likelihood of success on the merits, and the TROs dissolved. Importantly, however, when that plaintiff appealed this court's decision, the Court of Appeals for the Federal Circuit "reinstated the TROs

pending full consideration of the issues." 741 F.3d at 94. That is essentially, if not precisely, what Hyosung is seeking here through its motion -- a revival of the suspension of liquidation.

More precisely, the relief Hyosung actually seeks at this stage of the litigation is revival of that part of the existing PI that had enjoined liquidation of its entries until it was modified, purportedly without Hyosung's consent or consultations with other parties and Commerce. The October 24, 2011 PI is still in effect; it has only been modified as to certain entries covered by the first and second review periods. Certainly the court can "modify an injunction in adaptation to changed conditions," regardless of whether that is expressly stated or retained in the existing PI. *See United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). The question at this stage, thus, is not whether the TRO should continue, but whether the existing PI should be modified again.

"The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005). In the absence of consent, thus, the question is resolved, again, by resort to the familiar four-part test: (1) the likelihood of success on the merits of the underlying case; (2) whether irreparable injury occurs if injunctive relief is not granted; (3) whether the balance of hardships favors granting injunctive relief; and (4) whether injunction serves the public interest. *E.g.*, *Qingdao Taifa Group Co., Ltd. v. United States*, 581 F.3d 1375, 1378 (Fed. Cir. 2009). On these factors, the court employs a "sliding scale," meaning that no single factor is dispositive, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

On the likelihood of success on the merits prong, the defendant argues that since Hyosung has already failed on the merits of its claims, the availability of injunctive relief is precluded. As discussed above, that overstates the law. Hyosung argues that a successful appeal of its substantive claim, relating to Commerce's use of zeroing, might mean that the antidumping duty order on diamond sawblades from Korea was void *ab initio* as to Hyosung. *See* Hyosung Br. at 3. The court previously ruled against Hyosung; regardless, the "likelihood of success" of such an appeal pales in comparison to the harm Hyosung would suffer were its case to be mooted simply by the procedural expedient of liquidation's finality. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983). This is in accordance with the principle that "19 U.S.C. § 1516a(c)(2) envisions the use of preliminary injunctions . . . to preserve proper legal options and to allow for a full and fair review of duty determinations before liquidation." *Qingdao Taifa*, 581 F.3d at 1378-79.

Considering the irreparable harm prong, the court accepts Hyosung's representation that if enjoinder is not imposed (or rather revived), liquidation of entries of subject merchandise imported from Hyosung will include antidumping duties assessed at the rate set forth in the liquidation instructions Commerce ordered to Customs in Message No. 4162301 dated June 11, 2014 or Message No. 4175304 dated June 24, 2014. It is well-settled that "liquidation of entries extinguishes the underlying *res* and the accompanying cause of action, stripping this Court of the ability to provide a remedy to an importer." *Laclede Steel Co. v. United States*, 20 CIT 712, 717, 928 F. Supp. 1182, 1188 (1996). And, as mentioned, a court has a duty to resist change, unless by act of God, or Congress, or other *force majeur*, in order to maintain the *status quo* and preserve jurisdiction during the pendency of a cause of action, including appeals.

Consol. Court No. 06-00248                                                                                      Page 10

On the balance of equities, the court concludes the hardships Hyosung will experience are much greater, on balance, than those Commerce will be exposed to. If Customs is permitted to continue to liquidate Hyosung's entries before a final judgment in this matter, and Hyosung ultimately prevails, it will effectively lose its right to appeal Commerce's decision. On the other hand, suspension of liquidation will merely postpone the final settlement of the payment of duties to the United States by Hyosung (or its importers). Postponement is "at most" an "inconvenience" to the United States. *See SKF USA Inc., v. United States*, 28 CIT 170, 175, 316 F. Supp. 2d 1322, 1328 (2004); *see also Timken Co. v. United States*, 6 CIT 76, 81, 569 F. Supp. 65, 71 (1983). That is, if the United States were to prevail in this case, it would collect, with interest if appropriate, any amount owed by Hyosung. *See SKF*, 28 CIT at 175, 316 F. Supp. 2d at 1328. It should be commonsense that inconvenience to the government in the delay of collecting duties should not outweigh the permanent deprivation of the rights of a party. *See id.*, 316 F. Supp.2d at 1328-29. The requested relief therefore appears appropriate here, because the potential harm posed by the permanent deprivation of Hyosung's rights would outweigh any inconvenience the defendant or other parties would suffer as a result of the postponement of the collection of duties. But, the defendant attempts to convince that Hyosung's lack of diligence in seeking injunction prior to this point weighs against any entitlement to relief. The argument sounds from the maxims "he who seeks equity must do equity," or "equity aids the vigilant, not those who sleep on their rights." However, Hyosung's and the defendant's recitation of the long history of this proceeding, which has involved a lengthy period of a shifting *status quo*, a PI that the domestic industry obtained, and

> a confluence of timing factors including the termination of an attorney-client relationship, the shutdown of the federal government, the failure of counsel to other

>litigants to consult with Hyosung's counsel and to recognize Hyosung's live claim as a consolidated plaintiff, the failure to consult with Hyosung as required by the rules, the implementation of final modifications to the injunction that occurred when Hyosung had no counsel at all, and the ambiguities in and overbroad language of the proposed injunction language[,]

Hyosung Br. at 9-10, persuade that "good cause" exists for relieving Hyosung from its current predicament.

Considering the public interest, it is unquestionably best served by having the "correct amount" of antidumping duties assessed on subject merchandise. *E.g.*, *Ceramica Regiomontana, S.A. v. United States*, 7 CIT 390, 397, 590 F. Supp. 1260, 1265 (1984). It is also best served by proper representations to the court that its rules are being complied with. *See, e.g.*, USCIT R. 7(f).

*Conclusion*

On balance, the court is persuaded that granting Hyosung's motion for injunction, which involves a correction or modification of the current injunction that was erroneously amended without Hyosung's consent, is the correct course of action. A separate order to that effect will issue this date.

**So ordered**.

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: September 10, 2014
New York, New York